*532 OPINION of the Court, by
Ch. J. Boyle.
— James Guthrie having located for George James 8000 acres of land, the latter on the 28th of March 1783 executed to the former a writing to convey to him one fourth of the land. Some time in the same year or the next thereafter, it was verbally agreed between them that Guthrie should have 3000 acres lying on the Rolling Fork, her low the mouth of Prather’s creek, for his services as locator. On the 24th ef April 1786, James sold the. *533 s&id 3000 acres to William and Claibourn Duvall, as trustees for Samuel Duvall, for the consideration of 600/. and executed a deed of conveyance therefor, which has never been proven and recorded. On the 12th of October 1802, Guthrie having previously been informed of the deed from James to the Duvalls, received from James an instrument of writing, in which the latter bound himself to convey to Guthrie within one year the 3000 acres before mentioned, or on failure to do so to pay the value of his right.
Equity will not g've relief to a fubfyuent, ag.air.ll a prior purchaferwhere both were pur-chafers for a valuable confi* deration with* out fraud.
Guthrie afterwards filed his bill in chancery against James alone, and obtained a decree for the conveyance. To injoin proceedings upon that decree, and to have the deed to the Duvalls recorded, they filed their bill, making James and Guthrie and others claiming under him defendants. The court below decreed that James should pay the 600/. with interest, and dismissed the bill as to the other defendants ; from which decree this appeal has been prosecuted.
The question is, whether upon this state of facts the Duvalls were entitled to relief against Guthrie, and those to whom he has sold ?
It is evidently no objection to the agreement between James and Guthrie for the 3000 acres in question, that it was a verbal one : for at that time there was no law in this country requiring a contract for land to be in writing ; and that jc was for a valuable consideration, does not admit of controversy. Guthrie, therefore, acquired a right in equity to the land in question by that contract, which was anterior to the sale from James to the Duvalls. His subsequent attempts to secure and perfect his right, although they were made after he was informed of the existence of the deed to the Duvalls, cannot impair or weaken the equitable title which he had before acquired. His equity then being prior to that of the Duvalls, must in a court of equity be preferred to theirs : for the rule in this respectis, qui prior ést tempore potior est jure. If their deed gives them any legal advantage, a court of equity will not deprive them of such advantage, unless it be proven that they were purchasers with notice of Guthrie’s prior equity ; but there is no example in which a court of equity has ever g'tveq relief in favor of a subsequent against a pri- or purchaser, wfyere both purchases were made for a va» *534 luable consideration and without Fraud ; nór is the?* anv Pr5nciPle oi equity which will justify giving relief' in such a case.
The decree must be affirmed with costs.