[No. A030644. First Dist., Div. Two. Sept. 19, 1986.]

GRAPHIC ARTS INTERNATIONAL UNION, LOCAL NO. 280,
Plaintiff and Appellant, v.
OAKLAND NATIONAL ENGRAVING COMPANY,
Defendant and Respondent.

COUNSEL

Van Bourg, Weinberg, Roger & Rosenfeld and David A. Rosenfeld for Plaintiff and Appellant.

Angell, Holmes & Lea and Paul B. Johnson for Defendant and Respondent.

OPINION

SMITH, J.—Graphic Arts International Union, Local No. 280 (the Union) appeals from an order denying its petition to compel arbitration and entering judgment in favor of respondent, Oakland National Engraving Company (the Employer). The trial court reached the merits of what it perceived to be the dispute between the parties, finding in favor of the Employer. It held that to the extent the petition raised a representation issue, that issue was within the exclusive jurisdiction of the National Labor Relations Board (NLRB). It also ruled that the petition was barred by the statute of limitations. We reverse the decision below because (1) the ruling on the statute of limitations was erroneous as a matter of law; (2) a trial court in ruling upon a petition to compel arbitration must not reach the merits of an alleged dispute but, rather, must determine only the threshold question of whether an arbitrable controversy exists; and (3) the petition herein contained only conclusory allegations that such a dispute existed which were insufficient to enable a court to properly determine either whether an arbitrable controversy existed or whether an issue raised was within the exclusive jurisdiction of the NLRB. We hold that a petition to compel arbitration must allege specific facts, not mere conclusions, demonstrating the existence of an arbitrable controversy.

## Background

The Union filed its petition to compel arbitration on August 27, 1984. Its essential allegation was set forth in paragraph V of the petition: "Since on or about March 21, 1984 a dispute has existed over the interpretation and/or application of the collective bargaining agreement [between the Union and Employer] in that there has been and continues to be a dispute over the scope and coverage of the agreement as it applies to 'the performance of "Flexco"[1] work by non bargaining unit employees.'" A copy of the collective bargaining agreement and of the Union's March 21, 1984, grievance letter to the Employer were attached as exhibits to the petition and incorporated therein.

The grievance letter stated in pertinent part: "In accordance with our collective bargaining agreement, section 32, Grievance and Arbitration, this will serve as notice that [the Union] is herewith filing a grievance against [the Employer] for violating sections 1, 3, 4, 5, 6, 7, 8, 9, 12, 13, 14, 15, 17, 21, 22, 26, 28 and 29, as well as all other applicable sections of our collective bargaining agreement, for not performing its 'Flexo' work pursuant to the terms of the agreement . . . . [¶] In the event the grievance is not settled within the specified time frame, this letter shall stand as a request for arbitration [pursuant to the terms of the agreement]." The petition alleged that the Employer had failed and refused to submit the dispute for resolution pursuant to the grievance and arbitration provisions.

In its answer to the petition, the Employer asserted that there was no arbitrable dispute between the parties, that the court lacked jurisdiction of the subject matter because it involves a question of representation of employees within the exclusive jurisdiction of the NLRB and that the petition was barred by the applicable statute of limitations set forth in 29 United States Code section 160(b).

The parties filed legal memoranda in support of and in opposition to the petition. Additionally, the Employer submitted a declaration of John Waldichuk, vice-president of the Employer and president of a company named Flexo Packaging Service, Inc. (Flexo). His declaration went to the merits of what he appeared to believe were the factual underpinnings of the Union's grievance, i.e., that the Employer was subcontracting the manufacture of flexographic (plastic) printing plates to Flexo in violation of the subcontracting provisions of the collective bargaining agreement and that the Em-

---

[1] It appears that the word "Flexco" contained a typographical error, and that the term "Flexo" was intended. We will hereafter use the term "Flexo."

ployer and Flexo were actually a single employer (rather than separate entities), all of whose employees the Union was entitled to represent.[2]

A hearing was held on October 19, 1984. Thereafter the trial court entered its statement of decision and judgment on December 12, 1984, reaching the merits of the alleged dispute (at least as characterized by the Employer) and holding that the Employer had not violated the subcontracting provisions of the collective bargaining agreement. The court also held that any contention that the Employer and Flexo are a single employer is a question of representation within the exclusive jurisdiction of the NLRB. Finally, the court made an alternative holding that the petition was barred by the six-month statute of limitations set forth in 29 United States Code section 160(b). This timely appeal followed.

## I.

We first reject the Employer's argument that the decision below should be upheld on the basis of the statute of limitations.

■ The statute of limitations to be applied to a petition to compel arbitration of a labor dispute under a collective bargaining agreement, in an action filed in California, is six months. (*Teamsters Union* v. *Great Western Chemical Co.* (9th Cir. 1986) 781 F.2d 764.) The Ninth Circuit adopted the six-month provision governing unfair labor practice proceedings, 29 United States Code section 160(b), as the most appropriate to an action to compel arbitration.[3] The six-month period commences to run from the time that it is made clear by an employer to a union that the employer will not submit the matter in question to arbitration. (*Id.*, at p. 769; accord

---

[2]Since we conclude that the merits of any alleged dispute between the parties are in no way before us, and were not properly before the trial court, we deem it unnecessary to elaborate upon the facts set forth in Waldichuk's declaration.

[3]State and federal courts have concurrent jurisdiction over suits for violation of a contract between an employer and a labor organization representing employees in an industry affecting commerce. (29 U.S.C. § 185(a); *Dowd Box Co.* v. *Courtney* (1962) 368 U.S. 502 [7 L.Ed.2d 483, 82 S.Ct. 519].) The rights of the parties, however, are governed by substantive federal law. (*Id.*, at pp. 506-514 [7 L.Ed.2d at pp. 486-491]; *Textile Workers* v. *Lincoln Mills* (1957) 353 U.S. 448 [1 L.Ed.2d 972, 77 S.Ct. 912].) Congress did not enact a statute of limitations specifically governing such actions. *Auto Workers* v. *Hoosier Corp.* (1966) 383 U.S. 696, 705-706 [16 L.Ed.2d 192, 199-200, 86 S.Ct. 1107], held that the applicable statute should be determined as a matter of federal law by reference to the *appropriate* state statute of limitations. In *Teamsters Union* v. *Great Western Chemical Co., supra,* 781 F.2d 764, the Ninth Circuit determined that nothing precluded the "borrowing" of a federal statute of limitations if it were more "appropriate" than a state statute. (*Id.*, at pp. 766-767.) It concluded that the six-month provision of 29 United States Code section 160(b) is more appropriate to an action such as this than either the four-year provision for an action on a written contract set forth in California Code of Civil Procedure section 337, or the one hundred-day period to petition to vacate an arbitration award set forth in Code of Civil Procedure section 1288. We agree with the reasoning of the Ninth Circuit in *Teamsters Union.*

*Fed. of Westinghouse Ind.* v. *Westinghouse Elec. Corp.* (3d Cir. 1984) 736 F.2d 896, 902.) Since the Union's grievance letter in this case was submitted to the Employer on March 21, 1984, the refusal to arbitrate occurred after that time. Consequently, the petition filed on August 27, 1984, was timely.

## II.

Prior to oral argument in this case, we invited the Union to submit a letter discussing, inter alia, whether a petition to compel arbitration must allege specific facts demonstrating that an arbitrable controversy exists, or whether a conclusory allegation that a dispute exists over the scope and coverage of a collective bargaining agreement as it applies to the performance of certain undescribed work is sufficient. We also asked the Union to tell us the factual basis for its contention that the Employer had violated the collective bargaining agreement.[4]

The Union submitted a letter brief stating, without citation of direct authority, that it was not required to allege specific facts. It stated in pertinent part: "Whether the work is being performed under a subcontract or alter ego arrangement is not relevant at this time, for that relates to the merits of the Union's claim," and "all we have to do is present to the Court the nature of our claim without any underlying factual basis for the claim so that the Court can determine whether the claim is covered by the arbitration language of the contract, which it plainly is in this case because of the extremely broad nature of the arbitration clause."[5] The Union thus declined to enlighten us as to any factual basis for its claim.

In a responsive letter brief, the Employer urged, also without citation of direct authority but on a common sense basis, that a court cannot properly determine whether an arbitrable controversy exists when no factual basis for a claim has been disclosed by a party seeking to compel arbitration. We find this position sound and supported by authority.

In determining whether the Union's petition is insufficient for failure to adequately allege facts demonstrating an arbitrable controversy, we bear the following principles in mind. "The burden of persuasion to demonstrate

---

[4]By so doing, we had no intention of deeming facts which were not put in the record below by the Union to actually be there. Rather, we felt that such information would provide us with a better framework within which to decide this case and determine whether a remand to allow the Union an opportunity to file an amended petition might, in the interest of justice, be appropriate.

[5]The collective bargaining agreement provides in pertinent part that "any and all differences regarding this Agreement, and any and all differences between the parties hereto" (with an exception not here relevant) may be submitted to arbitration if not otherwise settled through the grievance procedure.

[to the court] that arbitration should be required rests upon the Union." (*Wm. Chalson & Co., Inc.* v. *Amalgamated Jewelry* (S.D.N.Y. 1979) 478 F.Supp. 1103, 1107.) However, it is also the case that the court has the "obligation, particularly in cases in the labor relations field, to construe the complaint most liberally in favor of the plaintiffs." (*Abrams* v. *Carrier Corporation* (2d Cir. 1970) 434 F.2d 1234, 1239, cert. den. (1971) 401 U.S. 1009 [28 L.Ed.2d 545, 91 S.Ct. 1253], citations omitted.)

The Union's argument is basically that, because a court when considering whether to order arbitration does not reach the merits of a grievance, conclusory allegations that a collective bargaining agreement has been violated are sufficient. We cannot agree. It is true that "in deciding whether the parties have agreed to submit a particular grievance to arbitration, a court is not to rule on the potential merits of the underlying claims." (*AT&T Technologies* v. *Communications Workers* (1986) 475 U.S. 643, 649 [89 L.Ed.2d 648, 656, 106 S.Ct. 1415].)[6] For the reasons set forth below, we conclude that while the trial court must not decide the merits of an alleged controversy when ruling upon a petition to compel arbitration, it must nevertheless determine the threshold question of whether the petition adequately alleges facts demonstrating the existence of an arbitrable controversy.

We have found no direct authority holding that a petition to compel arbitration must set forth some factual basis for a contention that an arbitrable controversy exists.[7] However, we do find support for the conclusion which

---

[6]"Whether 'arguable' or not, indeed even if it appears to the court to be frivolous, the union's claim that the employer has violated the collective-bargaining agreement is to be decided, not by the court asked to order arbitration, but as the parties have agreed, by the arbitrator." (*AT&T Technologies* v. *Communication Workers, supra,* 475 U.S. 643, 649-650 [89 L.Ed.2d 648, 656]; accord *Steelworkers* v. *American Mfg. Co.* (1960) 363 U.S. 564, 568 [4 L.Ed.2d 1403, 1407, 80 S.Ct. 1343] [In suits to compel arbitration of a labor grievance the courts "have no business weighing the merits of the grievance, considering whether there is equity in a particular claim, or determining whether there is particular language in the written instrument which will support the claim." (Fn. omitted.)].) It is thus clear that the trial court erred in making a ruling on the merits of the alleged claim that Flexo work was somehow being performed in violation of the provisions of the collective bargaining agreement.

[7]This is not surprising as the cases regarding proceedings to compel arbitration generally involve situations in which a factual basis demonstrating the existence of a controversy was alleged and the issue presented here thus had no occasion to arise. (See, e.g., *AT&T Technologies* v. *Communications Workers, supra,* 475 U.S. 643 [89 L.Ed.2d 648] [claim that company laid off workers, although there was no lack of work, in violation of provision barring layoffs except where necessitated by lack of work]; *Nolde Bros., Inc.* v. *Bakery Workers* (1977) 430 U.S. 243 [51 L.Ed.2d 300, 97 S.Ct. 1067] [claim that company failed to pay severance pay allegedly due under provision requiring such on termination of employment for all employees having three or more years of active service]; *John Wiley & Sons* v. *Livingston* (1964) 376 U.S. 543 [11 L.Ed.2d 898, 84 S.Ct. 909] [claims that certain rights (such as seniority status, severance pay, etc.) had vested under a collective bargaining agreement and survived merger of employer with another company]; *Textile Workers* v. *Lincoln Mills, supra,* 353 U.S. 448 [grievances concerning workloads and assignments,

we reach in this opinion through an analysis of the applicable statutes and procedural rules, as well as by analogy to federal court decisions in related areas of labor law.

As we have noted above (see fn. 3, *ante*), and as the Union and Employer agree, the rights of the parties to this proceeding are governed by substantive federal law. As another division of this court has observed: "In adjudicating an action which could have been brought in the federal courts under [29 U.S.C. § 185(a)], the state court must apply federal substantive law. [Citations.] Additionally, state procedural law may not be applied in such cases if it would impede the uniform application of the federal statute essential to effectuate its purpose. [Citation.]" (*Safeway Stores, Inc.* v. *Brotherhood of Teamsters* (1978) 83 Cal.App.3d 430, 436 [147 Cal.Rptr. 835].) Thus if the Union would be entitled to an order compelling arbitration under federal procedural law but not under California law, the federal law would govern. We conclude, however, that the result is the same under California and federal law.

Code of Civil Procedure section 1281.2 provides in pertinent part: "On petition of a party to an arbitration agreement alleging the existence of a written agreement to arbitrate a controversy and that a party thereto refuses to arbitrate such controversy, the court shall order the petitioner and the respondent to arbitrate the controversy if it determines that an agreement to arbitrate the controversy exists. . . ." Code of Civil Procedure section 1280, subdivision (c), defines "controversy" as "any question arising between parties to an agreement whether such question is one of law or of fact or both."

The provisions governing a proceeding to compel arbitration, Code of Civil Procedure section 1280 et seq., are contained in part 3 of the Code of Civil Procedure, relating to special proceedings. However, while a proceeding to compel arbitration is technically a special proceeding, it has been repeatedly held that such a proceeding "is in essence a suit in equity to compel specific performance of a contract." (*Freeman* v. *State Farm Mut. Auto. Ins. Co.* (1975) 14 Cal.3d 473, 479 [121 Cal.Rptr. 477, 535 P.2d 341]; *Trubowitch* v. *Riverbank Canning Co.* (1947) 30 Cal.2d 335, 347 [182 P.2d 182] and cases there cited.)

Code of Civil Procedure section 425.10, subdivision (a), requires that a complaint in a civil action contain "[a] statement of the facts constituting

---

including claim that backpay was owed for increased workloads]; *O'Malley* v. *Wilshire Oil Co.* (1963) 59 Cal.2d 482 [30 Cal.Rptr. 452, 381 P.2d 188] [claim that company contracted out transportation work in violation of provision that no work other than janitorial would be contracted out unless all laid off employees had been offered reemployment]; *Weiman* v. *Superior Court* (1959) 51 Cal.2d 710 [336 P.2d 489] [claim that payment was due for work satisfactorily performed under construction contract].)

the cause of action, in ordinary and concise language." Since a proceeding to compel arbitration is in essence an action to compel specific performance of a contract to arbitrate, we deem it appropriate to require a statement of facts showing the existence of a controversy, as would be required in any civil action.

Unlike the proceeding under the California statutes, a proceeding brought in federal court to compel arbitration is a regular civil action. It is filed pursuant to 29 United States Code section 185(a), providing for "[s]uits for violation of contracts between an employer and a labor organization. . . ." Pursuant to rule 8 (a)(2) of the Federal Rules of Civil Procedure (28 U.S.C.), a pleading setting forth a claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."

Under the federal standard, mere conclusory allegations are insufficient to demonstrate entitlement to relief. (See, e.g., *Marranzano* v. *Riggs Nat. Bank of Washington, D.C.* (1950) 87 App.D.C. 195 [184 F.2d 349] [allegation that employee's discharge violated collective bargaining agreement and was "wrongful and without good and sufficient cause or justification" held insufficient]; *Slagley* v. *Illinois Central Railroad Company* (7th Cir. 1968) 397 F.2d 546, 552 [allegations that union compelled employer to deprive plaintiff of seniority and such action unlawful and unconstitutional and in violation of collective bargaining agreement held to be mere conclusions of law and plainly insufficient]; *Lusk* v. *Eastern Products Corporation* (4th Cir. 1970) 427 F.2d 705, 708 [allegations of "an illegal combination between Union and Company in language which was purely conclusory, with no specific factual allegations to support the charges" held insufficient]; see also *Sedlarik* v. *General Motors Corporation* (W.D.Mich. 1971) 54 F.R.D. 230, 233 [stating conclusions unsupported by facts to justify them held insufficient].)

The federal standard under rule 8(a)(2) is less stringent than the California standard under Code of Civil Procedure 425.10, subdivision (a). (4 Witkin, Cal. Procedure (3d ed. 1985) Pleading, § 333, pp. 383-385.) Thus a statement of claim which would not pass muster under Federal Rule of Civil Procedure 8(a)(2) (28 U.S.C.) would, a fortiori, not pass muster under Code of Civil Procedure section 425.10, subdivision (a). Our review of the federal cases cited above persuades us that the Union's allegations that "Flexo" work, which is otherwise undescribed, was being performed in violation of at least 18 paragraphs of the collective bargaining agreement are just as conclusory as the allegations involved in those cases and are insufficient to demonstrate the existence of an arbitrable controversy under either federal or California law.

Because it is the trial court's duty to determine *whether* there is an arbitrable controversy, and if so what *issues* are to be arbitrated (see *John Wiley & Sons* v. *Livingston, supra*, 376 U.S. 543, 546-547 [11 L.Ed.2d 898, 902-903]), the court is entitled to know the factual basis for the Union's contention that an arbitrable dispute exists. Otherwise, the court is effectively required to engage in guesswork as to what the issues are.[8] The conclusion which we reach is also supported by logic and policy considerations. To hold otherwise would open the possibility that a party to an arbitration agreement could harass other parties to such an agreement or delay its performance by merely filing a conclusory petition to compel arbitration. This would be contrary to the underlying philosophy of arbitration, which is to provide a simple, quick, and inexpensive alternative to traditional court procedures.

## III.

We reverse the decision of the court below for the reasons stated herein and, in the interest of justice, remand this cause to the superior court to permit the union to file an amended petition in conformity with the views expressed in this opinion.[9] Each party shall bear its own costs on appeal.

Rouse, Acting P. J., and Benson, J., concurred.

---

[8] For example, in this case there was nothing in the Union's pleadings to indicate what "Flexo" work is or to enable the court to determine whether a claim was being made which would fall within the exclusive jurisdiction of the NLRB. Since the record did not disclose the basis for the Union's claim, no meaningful ruling could be made on the NLRB issue. We also note in this connection that, while citing other authorities, neither of the parties brought to the attention of the trial court or this court *Carey* v. *Westinghouse Corp.* (1964) 375 U.S. 261 [11 L.Ed.2d 320, 84 S.Ct. 401], holding that a dispute concerning representation is not necessarily within the exclusive jurisdiction of the NLRB and may be arbitrated under a collective bargaining agreement. Due to the conclusions we reach in this opinion, we express no views on any matter of NLRB jurisdiction.

[9] See *Marranzano* v. *Riggs Nat. Bank of Washington, D.C., supra,* 184 F.2d 349, 351, and *Sedlarik* v. *General Motors Corporation, supra,* 54 F.R.D. 230, 234, in which the courts granted plaintiffs the opportunity to file amended complaints setting forth facts, not mere conclusions, entitling them to relief.